T.C. Memo. 2005-195

UNITED STATES TAX COURT

OTU AND CAROL OBOT, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20030-03.              Filed August 11, 2005.

Otu and Carol Obot, pro sese.

<u>Jennifer S. McGinty</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  This is a substantiation case.  Most
taxpayers understand that to win a substantiation case, they must
produce credible proof of their deductible expenses.  Otu Obot,
who used to own a small grocery store in Buffalo, seeks to deduct
expenses by relying mostly--if not quite entirely--on doctored

receipts and implausible testimony.  We must inventory his claims and shelve those that are unsupported.[1]

## Background

During 1999, Otu Obot owned a small grocery store, and a house in a marginal Buffalo neighborhood that he rented out.  All the contested deductions flow from this grocery store and that rental property.  His wife Carol was a senior corrections counselor working for New York State, and she neither testified nor was involved in the case in any way except for signing the return and petition.  The case was tried in Buffalo, and both Obots were New York residents when they filed their petition.

The Obots itemized deductions on their 1999 return, using Schedule A.  They also reported losses from both the grocery store and the rental property on Schedules C and E.  The IRS audited their return and disallowed many of their deductions:

|  | Taken | Allowed | Disputed[2] |
|---|---|---|---|
| Schedule A | $17,567 | $10,174 | $ 7,393 |
| Schedule C | 17,096 | 3,023 | 14,073 |
| Schedule E | 11,025 | 2,319 | 8,706 |
| Total | 45,688 | 15,516 | 30,172 |

---

[1] Section references are to the Internal Revenue Code in effect during 1999, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The amount shown as disputed from Schedule A includes $2,174 in computational errors that are not at issue in this case.

The dispute over the Obots' Schedule A is confined to their attempted deductions for taxes paid:[3]

| | |
|---|---:|
| County of Erie--county and town tax | $1,433 |
| Real property tax and sewer rent bill | 734 |
| Public user fee | 155 |
| Water bill | 128 |
| Utilities, phone, gasoline, sewer, etc. | 1,021 |
| Personal property taxes | 1,634 |
| Unsubstantiated balance | 114 |

The Commissioner also challenged a number of deductions for grocery store expenses that the Obots took on their Schedule C:

| | |
|---|---:|
| Supplies | $2,248 |
| Advertising | 2,343 |
| Cost of goods sold | 7,545 |
| Legal/professional | 1,282 |
| Other expenses | 655 |

And, finally, the Commissioner challenged most of the Obots' Schedule E expenses on their rental property:

| | |
|---|---:|
| Depreciation | $1,200 |
| Repairs | 2,893 |
| Management fees | 3,200 |
| Utilities | 1,413 |

The Trial

In deciding whether a taxpayer has substantiated his deductions, we ordinarily look at the proof he offers in the form of documentation and testimony.  In Mr. Obot's case, we can

---

[3] Originally, the IRS allowed taxes paid deductions of only $6,651 on Schedule A and $1,750 on Schedule C.  The Obots have since substantiated payments of local property tax bills for $1,432.19 on their Schedule A, and a $100 advertising expense deductible on their Schedule C, and the Commissioner concedes those amounts.

neither give his testimony weight nor use the documents he submitted as proof.

His severe credibility problems began with his testimony explaining why he had so few original records. He said that a broken pipe had flooded the grocery store and destroyed most of his records. The first time he mentioned the flood, however, was shortly before trial--he had never mentioned it during his audit. Even at trial, Mr. Obot testified variously that the flooding happened in "2000, 2001," and that he incurred legal fees sometime in 1999 when "my stuff flooded and his [landlord's] insurance was supposed to cover part of that." He did not file an insurance claim of his own, didn't have any proof of filing one with his landlord, and did not seek a casualty loss deduction for the flood. After the Commissioner challenged this flood narrative, the Court specifically invited Mr. Obot to retake the stand to rebut the Commissioner's proof. He declined to do so. Because he offered no evidence besides his say-so that there was a flood, we conclude that there was no flood.

Then there were the receipts he introduced as proof of deductible expenses. Even a cursory look showed them to have been either altered or photocopied in such a way as to obscure key information. For instance, he introduced a photocopy of a receipt for the purchase of a cash register that was dated "July 2, 1999" at the top of the document, but "July 2, 1996" at the

bottom. Testimony from the seller corroborated the 1996 sale date. He also offered photocopies of some receipts with the last digit of the year hidden by two strategically placed paperclips, and then capped his display of incredible evidence by trying to introduce photocopies of advertising receipts with information carefully whited out. Federal Rule of Evidence 1003 tells us to treat duplicates as originals unless there is a genuine question as to the accuracy of their reproduction. Here, there were not only genuine questions but obvious answers to the question of their accuracy. As a result, we give little weight to either the testimony or the documentary evidence that he provided.

We also decline to base any part of our decision on Mr. Obot's posttrial brief. This brief is largely a series of "worksheets," created utterly without any reference to evidence or testimony at trial, that remarkably seeks to <u>increase</u> the amounts of many of the implausible deductions claimed on the Obots' original return.

Discussion

The law requires taxpayers to maintain records that enable the IRS to verify income and expenses. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Under Rule 142(a), a petitioner bears the burden of proof. It is true that a petitioner who produces sufficient credible evidence with regard to any factual issue may be able to shift that burden to the Commissioner for that issue.

Sec. 7491(a). Mr. Obot audaciously argues that the burden of proof in this case should shift to the Commissioner. We disagree. Though neither the Code nor the regulations define "credible evidence", the legislative history helps us:

> Credible evidence is the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted * * * A taxpayer has not produced credible evidence for these purposes if the taxpayer merely makes implausible factual assertions, frivolous claims, or tax protestor-type arguments. The introduction of evidence will not meet this standard if the court is not convinced that it is worthy of belief. [H. Conf. Rept. 105-599, at 240-241 (1998), 1998-3 C.B. 747, 994-995.]

For us to shift the burden on a specific issue, not only must Mr. Obot produce credible evidence, but he also must show that he complied with the specific substantiation requirements for the deduction in question, that he maintained all records, and that he cooperated with the Commissioner's reasonable requests for items such as witnesses, information, and documents. See sec. 7491(a)(2).

We find that Mr. Obot has not cooperated with the IRS. Instead of producing the records from his business, he falsely claimed that they were lost in a flood. The records he did produce were not credible: he doctored receipts or concealed key information before photocopying them. We conclude that the burden of proof stays on him.

Taxpayers may meet their burden even without proof of precise numbers. If a taxpayer claims a business expense, but cannot fully substantiate it, we may approximate the allowable amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). For this rule to apply, the taxpayer must provide at least some reasonable evidence from which to estimate a deductible amount. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). We need not apply the Cohan rule at all if the evidence is insufficient to identify the nature or estimate the extent of the expenses. See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Because the evidence Mr. Obot provided lacks credibility, we will not use the Cohan rule in recalculating his deductions. See Lerch v. Commissioner, 877 F.2d 624, 628-629 (7th Cir. 1989) (no obligation to apply Cohan rule where taxpayer fails to cooperate with Commissioner and Tax Court), affg. T.C. Memo 1987-295.

With these general thoughts in mind, we now look to each of the disputed deductions.

Schedule A

The disputed Schedule A deductions are taxes that Mr. Obot paid. The first group are excise taxes of $1,021 charged on his personal utility, telephone, gasoline, and sewer bills. Excise taxes on personal bills are not deductible, Fife v. Commissioner, 73 T.C. 621, 623-624 (1980), and we disallow them.

Mr. Obot also deducted state and local personal property taxes of $1,634. For these to be allowed, Mr. Obot must show that they were a state or local tax annually charged on personal property based on its value. Sec. 164(a)(2), (b)(1). He offered no proof that the personal property taxes he allegedly paid were based on his property's value, and so we agree with the Commissioner that he cannot deduct them. Mr. Obot next claimed a $155 public user fee and a $128 water bill. He did not point us to any Code section that would make these deductible, and finding none ourselves, we cannot allow him these deductions either. See Deputy v. du Pont, 308 U.S. 488, 493 (1940).

The next two deductions--$1,433 in "County of Erie--County and Town Tax" and $734 in "Real Property Tax and Sewer Rent Bill" at least sound valid: real property taxes levied by state, local, or foreign jurisdictions are deductible. Sec. 164(a)(1). Mr. Obot did have bills for these two taxes, but he is a cash-basis taxpayer, and so he must show that he paid each tax during the year for which he's claiming it as a deduction. Sec. 1.446-1(c)(1)(i), Income Tax Regs. While he submitted these two bills as proof, they showed no amount as having been paid. Mr. Obot had no canceled checks or receipts to prove payment, and the bills alone are insufficient proof. He doesn't get these deductions either.

That leaves only an additional $114, but the Obots never described what kind of tax, if any, it was or to whom it was paid--and so we disallow it too.

## Schedule C

Mr. Obot's Schedule C deductions come from his grocery store. Under section 162, all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business are deductible, but a taxpayer must of course have sufficient records to substantiate them. Sec. 1.6001-1(a), Income Tax Regs.

As already described, Mr. Obot did not have credible records. Therefore, we decline to use the Cohan rule to estimate expenses that are based on incredible testimony and doctored documents. See Williams v. United States, 245 F.2d at 560. With the exception of the $100 advertising expense that the Commissioner has already conceded, we do not allow any of Mr. Obot's claimed Schedule C deductions.

## Schedule E

Most of the expenses Mr. Obot claimed on Schedule E arise from his rental real estate. During the trial, Mr. Obot promised that he would have a witness appear who would substantiate both the repair expenses and the management fees. This witness never appeared. Thus, we presume that had he appeared, his testimony would have been unfavorable. See Wichita Terminal Elevator Co.

v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947).  Because Mr. Obot failed to offer any credible evidence to substantiate these expenses, we cannot allow any of them.  Mr. Obot also claimed $1,200 in depreciation on equipment for his grocery store.  At least that's what he argued in his brief, contending that he should have put the $1,200 depreciation on Schedule C.  He again provided us with no evidence of which items he was depreciating or the price that he paid for them. See sec. 1.6001-1(a), Income Tax Regs.  We deny his depreciation deduction because he didn't substantiate it, not because he put it on the wrong form.

Nevertheless, because the Commissioner conceded some additional deductions,

Decision will be entered under Rule 155.